IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs February 11, 2015

## STATE OF TENNESSEE v. RUBALDDI ESPINOZA YOC

**Appeal from the Circuit Court for Bedford County**
**No. 17749     Forest A. Durard, Jr., Judge**

_____

**No. M2014-01031-CCA-R3-CD – Filed February 25, 2015**

_____

Defendant, Rubalddi Espinoza Yoc, was convicted by a jury of one count of possession with intent to sell 0.5 grams or more of a Schedule II controlled substance and one count of delivery of 0.5 grams or more of a Schedule II controlled substance. The trial court merged the two counts and sentenced Defendant to nine years' incarceration as a Range I, standard offender, with all but one year suspended on probation. On appeal, Defendant challenges the sufficiency of the evidence. Based upon our review of the record and legal authorities, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Donna Orr Hargrove, District Public Defender, and Andrew Jackson Dearing III, Assistant Public Defender, Shelbyville, Tennessee, for the appellant, Rubalddi Espinoza Yoc.

Herbert H. Slatery III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Robert Carter, District Attorney General; and Michael Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

_Factual Background_

Defendant was indicted by the Bedford County Grand Jury on October 28, 2013, for one count of possession with intent to sell 0.5 grams or more of a Schedule II controlled substance and one count of delivery of 0.5 grams or more of a Schedule II controlled substance. A jury trial was held on February 12, 2014, at which the following proof was adduced:

Lieutenant Shane Daugherty of the 17th Judicial District Drug Task Force was contacted by Gregorio Alcarez Soto, a paid confidential informant. Mr. Soto informed the Drug Task Force that Defendant was looking to sell an ounce of cocaine. Mr. Soto had been a confidential informant for the Drug Task Force on several cases in Nashville and Smyrna and had performed reliably in the past. Mr. Soto arranged for Agent Chris Smith, an undercover officer, to purchase the cocaine from Defendant in Shelbyville for $1,400. The Drug Task Force intended to arrest Defendant immediately after Agent Smith gave the signal that the transaction had been completed in what is known as a "buy/bust."

On May 1, 2013, Mr. Soto drove Defendant to the specified location—a Kroger parking lot—around 2:30 p.m. Agent Smith was already in the parking lot, wearing street clothes and an audio recording device. Other officers were also positioned throughout the parking lot in undercover vehicles. The recording device transmitted to a receiver in Lieutenant Daugherty's vehicle so that he could hear the transaction in real time. There was also a camera in Lieutenant Daugherty's vehicle to film the arrest; however, the camera was not in a position to film the transaction.

Lieutenant Daugherty observed Mr. Soto's vehicle pull into the parking lot with Defendant in the front passenger seat. Agent Smith's car was backed into a parking space, and Mr. Soto pulled into the adjacent parking space so that Defendant's door was next to Agent Smith's door. Lieutenant Daugherty observed Agent Smith exit his vehicle and approach the passenger side door where Defendant was sitting. Defendant's window was open. Agent Smith showed a "flash roll"—a wad of money used to assure a potential drug dealer that the buyer is not intending to rip him off—then put the money back in his pocket. Lieutenant Daugherty observed Agent Smith reach his hands through Defendant's window. Then Agent Smith gave the visual and audio signals that the transaction was complete, and the Drug Task Force officers moved their cars to block Defendant from potentially attempting to flee. Both Mr. Soto and Agent Smith were arrested along with Defendant so as not to reveal their undercover identity; they were later released once Defendant had been taken into custody and removed from the scene.

Lieutenant Daugherty searched the passenger side of Mr. Soto's vehicle where Defendant had been sitting. He discovered a plastic shopping bag with cocaine tied in a corner on the passenger side floorboard next to a caulk gun. Although Lieutenant Daugherty had searched Mr. Soto's vehicle on several prior occasions, he had never before observed a caulk gun or any kind of construction tool or equipment inside Mr.

Soto's car. The cocaine appeared to be approximately one ounce, which Lieutenant Daugherty explained was an amount typical of a "mid-level dealer." Lieutenant Daugherty turned the cocaine over to Agent Smith, and it was eventually sent to the Tennessee Bureau of Investigation ("TBI") for testing.

Mr. Soto had known Defendant for approximately two months prior to the drug transaction. He met Defendant at a Mexican restaurant in Smyrna where Mr. Soto worked. Mr. Soto learned that Defendant sold cocaine, so he told Defendant that he knew of a buyer in Shelbyville who wanted to buy an ounce of cocaine. Defendant told Mr. Soto that he planned to sell an ounce of cocaine in Shelbyville and that he intended to return to sell more drugs in the future. The Drug Task Force paid Mr. Soto to provide information concerning drug dealers, so Mr. Soto called Lieutenant Daugherty and arranged for an undercover officer to buy cocaine from Defendant in Shelbyville.

Mr. Soto picked up Defendant, who did not have a car, at a trailer park in Smyrna and drove him to Shelbyville. When Defendant got into Mr. Soto's car, Defendant was carrying a caulk gun. Defendant explained to Mr. Soto that the caulk gun was a good place to hide drugs. Defendant opened the caulk gun and showed Mr. Soto the cocaine that was hidden inside.

Mr. Soto called Lieutenant Daugherty and informed him that they were en route to Shelbyville, and the Lieutenant told Mr. Soto to bring Defendant to the parking lot of the Kroger gas station. Upon arriving, Mr. Soto saw the undercover officer, Agent Smith, sitting in a parked Mustang convertible. Mr. Soto pulled his car in to the parking space next to Agent Smith's car so that Defendant's passenger side door was closest to Agent Smith's driver side door.

Agent Smith stepped out of his car and approached Defendant's window. Agent Smith showed Defendant some cash and spoke to Defendant. Defendant gave Agent Smith the cocaine. Agent Smith weighed the cocaine with a digital scale placed on Defendant's lap and determined that it was just under an ounce. Defendant gave the cocaine and the scales back to Agent Smith. Then several police officers approached the car, arrested Defendant, and pretended to arrest Mr. Soto and Agent Smith. Once Defendant was taken away from the scene, the handcuffs were removed from Mr. Soto and he was allowed to drive home.

Agent Christopher Smith was employed by the 17th Judicial District Drug Task Force in May 2013.[1] He had worked with Mr. Soto on several prior undercover operations. Agent Smith planned to pose as a cocaine dealer looking to find a new source to buy cocaine. He wore a recording device underneath his street clothes in order to record the transaction and transmit it to Lieutenant Daugherty in real time. Agent Smith

---

[1] At the time of trial, Agent Smith was employed with the Winchester Police Department.

planned to give both a visual and audio signal once the transaction reached a certain point so that the other officers would move in and make the arrest.

Agent Smith observed Mr. Soto drive his van, with Defendant in the passenger seat, into the parking lot and park in the designated location next to Agent Smith's car. Agent Smith approached the rolled-down passenger side window and said, "Que pasa, amigo?" meaning, "What's up, friend?" Agent Smith showed Defendant his flash roll of money and said, "This is what I have; what do you have?" Defendant pulled out the cocaine from under his left leg and handed it to Agent Smith. The cocaine was tied in a white plastic shopping bag. Agent Smith looked at the cocaine and felt it. Then he pulled out a digital scale and weighed the cocaine inside the vehicle, on Defendant's leg. The digital scale showed that the cocaine weighed 22.4 grams. Agent Smith told Defendant that the cocaine was short of an ounce and asked if he had any more. Defendant told Agent Smith that he did not have any more. At that point, Agent Smith gave the audio and visual signals for the other officers to approach and arrest Defendant. Once he observed the other officers approaching, Agent Smith threw the cocaine and scales down in Defendant's lap and attempted to run off. Agent Smith explained that a real dealer would not want to be caught with the drugs in his possession. The other officers arrested Defendant and pretended to arrest Mr. Soto and Agent Smith.

Agent Denotria Patterson, a forensic chemist at the TBI Crime Lab, analyzed the white-powdery substance that was taken into evidence. She determined that the substance was cocaine and that it weighed 28.33 grams—less than a tenth of a gram short of an ounce.

Defendant told the jury that he is a construction worker who has lived in Smyrna for eight to nine years. He met Mr. Soto at a restaurant in April of 2013. Defendant asked Mr. Soto if he could help him find a job. Mr. Soto informed him of a job in Shelbyville to seal a chimney for $100. On May 1, 2013, Mr. Soto picked up Defendant to transport him to Shelbyville for the job. Defendant brought a caulking gun so that he could seal the chimney. Defendant claimed that he never discussed drugs or drug dealing with Mr. Soto.

Defendant claimed that Mr. Soto told him that he needed to make a stop and then pulled into the Kroger parking lot. Mr. Soto rolled down the passenger side window. Mr. Soto handed him the package of cocaine and told him to pass it to the undercover officer. Defendant stated that he did not remember seeing Agent Smith show him money. He claimed that he did not know it was a drug deal, did not know what was in the package, and that the package in evidence was a different package. When Agent Smith placed the scales on Defendant's leg, Defendant said he did not look at it. Defendant claimed that his voice is not on the recording of the transaction because the undercover officer was talking to Mr. Soto. Defendant insisted that he was not a drug dealer.

The jury convicted Defendant as charged of one count of possession with intent to sell 0.5 grams or more of a Schedule II controlled substance and one count of delivery of 0.5 grams or more of a Schedule II controlled substance. At a sentencing hearing on April 21, 2014, the trial court merged the two counts and sentenced Defendant to nine years' incarceration as a Range I, standard offender. The trial court ordered Defendant to serve 365 days in confinement, day for day, with the remainder of the sentence to be served on probation.

Defendant filed a timely motion for new trial. The trial court held a hearing and denied the motion on May 19, 2014. Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant argues that the evidence is insufficient to sustain his convictions. When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Reid*, 91 S.W.3d at 277. Questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Tennessee Code Annotated section 39-17-417(a) designates it an offense "to knowingly . . . [d]eliver a controlled substance . . . or [p]ossess a controlled substance with intent to . . . deliver or sell the controlled substance." If the controlled substance is cocaine, and the amount is 0.5 grams or more, the offense is a Class B felony. T.C.A. § 39-17-417(c)(1). The term "possession" encompasses both actual and constructive

possession. *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). In order for a person to "constructively possess" a drug, that person must have "the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others." *Id.* (quoting *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981)). The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs. *Id.*

Defendant argues that the proof regarding his participation in the drug transaction was circumstantial and that there was no "'web of proof woven around' the defendant sufficient to exclude, beyond a reasonable doubt, all other possibilities [s]ave that the defendant committed the acts." Defendant's argument is incorrect in two respects. First, the evidence in this case consisted primarily of direct evidence, also referred to as testimonial evidence, of Defendant's participation in the crime. Direct evidence proves the existence of a fact at issue without an inference or presumption. *State v. Thompson*, 519 S.W.2d 789, 792-93 (Tenn. 1975). Circumstantial evidence, on the other hand, requires an inference to prove a fact at issue. *Id.* For example, fingerprints are circumstantial evidence because one can infer that a certain person handled an object from evidence that his fingerprints were discovered on it. On the other hand, eyewitness testimony that a certain person handled an object is direct evidence because no inference is required. The evidence in this case consisted primarily of the testimony of both Agent Smith and Mr. Soto that Defendant possessed cocaine, discussed selling it with Mr. Soto, and delivered it to Agent Smith. This is direct evidence because no inference is needed to prove these facts.[2]

Defendant's argument is also incorrect in that it applies an outdated legal standard to the evaluation of circumstantial evidence on appeal. Our supreme court has held that "[c]ircumstantial evidence is sufficient to sustain a defendant's conviction even if the evidence does not 'remove every reasonable hypothesis except that of guilt.'" *State v. Smith*, 436 S.W.3d 751, 764 (Tenn. 2014) (quoting *Dorantes*, 331 S.W.3d at 381). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). In *Dorantes*, the Tennessee Supreme Court specifically adopted the standard for circumstantial evidence established by the United States Supreme Court in *Holland v. United States*:

> Circumstantial evidence . . . is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence.

---

[2] Defendant's statement to Mr. Soto that he wanted to sell an ounce of cocaine could also be considered circumstantial evidence of Defendant's intent, since one can infer from his saying that he wants to sell cocaine that he intends to do so.

In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.

*Dorantes*, 331 S.W.3d at 380 (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)). In doing so, our supreme court rejected the previous standard which "required the State to prove facts and circumstances so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." *Id.* at 380 (quoting *State v. Crawford*, 470 S.W.2d 610, 612 (Tenn. 1971)) (quotation marks omitted).

In the light most favorable to the State, the evidence in this case showed that Defendant told Mr. Soto that he had an ounce of cocaine that he wanted to sell in Shelbyville and that he intended to sell more drugs there in the future. Mr. Soto informed the Drug Task Force officers, and arrangements were made for Defendant to sell the cocaine to an undercover officer, Agent Smith. Mr. Soto testified that Defendant told him that a caulk gun is a good place to hide drugs and showed him the package of cocaine hidden inside. Agent Smith testified that when he approached Defendant's open passenger side window and showed Defendant his flash roll of money, Defendant pulled out a package of cocaine from under his leg and gave it to Agent Smith. Agent Smith set a digital scale on Defendant's leg to weigh the package. When Agent Smith told Defendant that the weight was short of an ounce and asked if Defendant had any more, Defendant replied that he did not. Both Mr. Soto and Agent Smith identified Defendant as the person who possessed the cocaine and delivered it to Agent Smith. Lieutenant Daugherty searched the van and discovered the package of cocaine on the passenger side floorboard next to a caulk gun. The cocaine weighed over twenty-eight grams. The jury clearly chose to believe the testimony of Mr. Soto and Agent Smith over the testimony of Defendant, as was their prerogative. The evidence in this case is more than sufficient for a reasonable jury to find Defendant guilty of possession of cocaine with intent to sell and of delivering that cocaine. Defendant is not entitled to relief.

*Conclusion*

Based on the foregoing, we affirm the judgment of the trial court.

_____
TIMOTHY L. EASTER, JUDGE

-7-